# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOYD HAMILTON, | No. 2:14-cv-0392-KJM-CMK |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are plaintiff's motion for summary judgment (Doc. 17) and defendant's cross-motion for summary judgment (Doc. 23).

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on April 20, 2011, alleging an onset of disability on August 22, 2010, due to depression, anxiety, paranoia, diabetes, high blood pressure, and a right hand problem (Certified administrative record ("CAR") 61, 73, 74, 144, 160-61 ). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on August 1, 2012, before Administrative Law Judge

("ALJ") Mark C. Ramsey. In a September 11, 2012, decision, the ALJ concluded that plaintiff is not disabled[1] based on the following findings:

> 1. The claimant has not engaged in substantial gainful activity since April 20, 2011, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: PTSD, diabetes, depression, anxiety, and history of drug abuse (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

        perform the full range of medium work as defined in 20 CFR 416.967(c).  Mentally, he is able to perform simple unskilled work without frequent public or fellow employee contact.

5.     The claimant is capable of performing past relevant work (work performed within the past 15 years, performed long enough to learn the work, and performed as substantial gainful activity).  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.     The claimant has not been under a disability, as defined in the Social Security Act, since April 20, 2011, the date the application was filed (20 CFR 416.920(f)).

(CAR 8-16).

After the Appeals Council declined review on December 5, 2013, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

1  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th
2  Cir. 1988).

### III. DISCUSSION

Plaintiff argues the ALJ erred in the following ways:  (1) the ALJ failed to develop and evaluate plaintiff's mental impairment; (2) the ALJ failed to properly weigh the opinion evidence in the record in formulating plaintiff's residual functional capacity; and (3) the ALJ failed to properly evaluate plaintiff's testimony and third party's statements.

**A.   Mental Impairment**

Plaintiff first argues that the ALJ failed to properly evaluate his mental impairment.  Specifically he contends the ALJ failed to consider his low IQ under section 12.05 of the Listing of Impairments at 20 C.F.R. Pt. 404, App. 1.  Defendant counters that plaintiff failed to allege in his application or otherwise that he was unable to work due to intellectual disability, and that he bears the burden of proving he has such an impairment.

Generally, claimants have the initial burden of proving their symptoms rise to the severity set forth in the listings.  See Burch v. Barnhart, 40 F.3d 676, 683 (9th Cir. 2005).  Once the claimant presents evidence in an effort to establish equivalence, the ALJ must compare the claimant's impairments to the listing criteria.  See id.

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

/ / /

/ / /

Listing 12.05, which governs mental retardation, explains that:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
>    B.  A valid verbal, performance, or full scale IQ of 59 or less;
>    OR
>    C.  A valid verbal, performance, or full scale IQ of 60 though 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function;
>    OR
>    D.  A valid verbal, performance, or full sale IQ of 60 through 70, resulting in at least two of the following:
>       1.  Marked restriction of activities of daily living; or
>       2.  Marked difficulties in maintaining social functioning; or
>       3.  Marked difficulties in maintaining concentration, persistence, or pace; or
>       4.  Repeated episodes of decompensation, each of extended duration.

20 CFR, Part 404, Subpart P, Appendix 1.

In this case, plaintiff claimed disability based on depression, anxiety, paranoia, diabetes, high blood pressure, and a right hand problem. He did not specifically allege low intellectual abilities in his application. However, based on his claim of depression, anxiety and paranoia, a psychological evaluation was done by consultative examiner, Ona Stiles, Ph.D. (CAR 666-72). During the examination, Dr. Stiles conducted psychological testing, including WAIS-IV, VCI, WMI, WMS-IV, Bender-Gestalt-II, Trail Making Test, and Test of Memory Malingering (TOMM). Dr. Stiles found plaintiff put forth an adequate level of effort on the tests, and considered the result to be an accurate representation of plaintiff's psychological functioning. Dr. Stiles stated, "The test results indicate that the claimant is functioning in the extremely low range for his working memory, and the borderline range for his verbal comprehension, perceptual

1  reasoning and processing speed." (CAR 669).  Plaintiff's full scale IQ was 65.

2  The ALJ, in reviewing plaintiff's mental impairments, analyzed plaintiff's impairments under Listings 12.04 (Affective (mood) Disorder), 12.06 (Anxiety-related Disorders), and 12.09 (Substance Addition Disorder), and found plaintiff's impairments do not meet or equal any of the criteria.  The ALJ noted that plaintiff does not have a longitudinal history of mental health treatment, but had received mental health treatment and diagnoses after being assaulted in 2009.  The ALJ set forth the findings from the psychological evaluation, including Dr. Stiles' finding that plaintiff's full scale IQ was 65, and that plaintiff put forth an adequate effort during testing.  The ALJ also acknowledged that plaintiff told Dr. Stiles that he had a learning disability and was in special education throughout his schooling.  Despite plaintiff's low IQ and questionable abilities relating to his education, the ALJ failed to address Listing 12.05.

While plaintiff did not specifically argue that he met Listing 12.05, it is clear that the ALJ was presented with evidence that plaintiff's IQ score was low enough to meet at least that prong of Listing 12.05, and no indication that the ALJ determined the IQ score to be invalid.  The ALJ's failure to acknowledge and discuss Listing 12.05 based on the evidence of plaintiff's low IQ would support a remand in this case for further analysis.  See Gomez v. Astrue, 695 F.Supp.2d 1049, 1057 (C.D. Cal. 2010) ("Section 12.05 does not require a diagnosis or finding of 'mental retardation,' but relies instead on valid IQs in conjunction with other evidence to establish 'subaverage general intellectual functioning.' See SSR 83–19, 1983 WL 31248, at *2."); see also Thresher v. Astrue, 283 Fed.Appx. 473 (9th Cir. 2008).

An IQ low enough to meet one prong of Listing 12.05 is only part of the analysis.  Listing 12.05(c) also requires additional limitations and a manifestation of the mental deficiencies prior to age 22.  Here, there is limited evidence as to when plaintiff's mental deficiencies manifested.  However, there is some evidence, albeit very limited, that plaintiff had learning difficulties in school which could be developed and used to determine when his

6

deficiencies manifested.  Plaintiff failed to meet his burden to show that his mental deficiencies occurred prior to age 22, and most importantly prior to the assault, but the ALJ's failure to address the evidence at all does not render that defect fatal.  Therefore, it is appropriate to remand for further development of the record.  Depending on what the evidence shows, the defendant's analysis of the information may not change the outcome of this case.  However, based on the information presented and the lack of any analysis of Listing 12.05, further development is necessary.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

### B.     Residual Functional Capacity

Plaintiff next argues the ALJ erred in failing to adopt appropriate limitations supported by the opinions he accorded great weight.  Specifically, he claims the ALJ accorded Dr. Stiles' opinion great weight, but failed to incorporate all of the limitations in Dr. Stiles' opinion into plaintiff's residual functional capacity (RFC).

In determining the plaintiff's RFC, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations.  See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

Here, the ALJ found plaintiff capable of performing the full range of medium work, but limited to simple unskilled work, without frequent public or fellow employee contact.  (CAR 13).  Plaintiff argues this does not encompass all of his limitations, most importantly Dr. Stiles' finding that plaintiff had moderate difficulties in social functioning and in concentration, persistence or pace.

The medical evidence in the record includes the opinion of Dr. Stiles, who examined plaintiff on November 29, 2011. (CAR 666-72).  Dr. Stiles found plaintiff had the following work-related abilities:

> The claimant had mild difficulty understanding, remembering, and carry out simple instructions.  Claimant had significant difficulty with detailed and complex instructions.  Claimant had no difficulty

>maintaining attention and concentration for the duration of the evaluation. Claimant's pace was moderately decreased. Claimant demonstrated moderate difficulty enduring the stress of the interview. Claimant is likely to have moderate to significant difficulty adapting to changes in routine work-related settings. Based upon observations of current behavior and reported psychiatric history, the claimant's ability to interact with the public, supervisors, and coworkers there appears to be moderate impairment due to anxiety and PTSD symptoms.

(CAR 671-72).

In addition to Dr. Stiles' opinion, the ALJ stated the RFC assessment was supported by the State agency determination, the objective medical evidence and plaintiff's presentation at the hearing. In reviewing the record, the State agency doctor, Dr. Meenakshi, completed a mental residual functional capacity assessment. (CAR 85-87). Specifically, Dr. Meenakshi found plaintiff not significantly limited in his ability to carry out short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; and make simple work-related decisions. But the doctor found plaintiff moderately limited in his ability to work in coordination or in proximity to others, maintain attention and concentration for extended periods, and complete a normal workday and workweek, without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and markedly limited in his ability to carry out detailed instructions. As to plaintiff's ability for sustained concentration and persistence, Dr. Meenakshi stated, "Claimant is able to maintain concentration, persistence, and pace for simple work tasks." (CAR 86). In addition, Dr. Meenakshi found plaintiff able to perform simple work tasks, perform limited public work, and adapt to changes found in a simple work setting. (CAR 87).

The ALJ used both of these medical opinions in formulating plaintiff's RFC. Contrary to plaintiff's argument that the ALJ failed to credit the limitations Dr. Stiles set forth, specifically in regards to his ability to maintain concentration, persistence or pace, as well as difficulty adapting to change in routine work-related settings and interacting with the public,

8

coworkers, and supervisors, the ALJ adequately incorporated both Dr. Stiles' and Dr. Meenakshi's limitations into the RFC. While plaintiff may have moderate limitations in his abilities, both doctors opined that plaintiff could maintain concentration, persistence, and pace for simple work tasks, which is what the ALJ accepted. See Stubbs-Danielson, 539 F.3d 1169 (9th Cir. 2008).

Accordingly, the undersigned finds the RFC adopted by the ALJ is supported by substantial evidence.

**C.  Vocational Expert**

Next, plaintiff argues the ALJ erred in failing to call a vocational expert to testify at the administrative hearing, and in using the Medical-Vocational Guidelines (GRIDs) without the aid of a vocational expert.

At step four of the sequential disability evaluation set forth in 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f), if the claimant's impairment is not listed in the regulations, a determination is then made as to whether the impairment prevents the claimant from performing his or her past work. At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. (Villa v. Heckler, 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a). If the impairment does not prevent the claimant from performing his or her past work, the claimant is not presumed disabled and the analysis ends. If the impairment prevents the claimant from performing his or her past work, a determination is made whether the claimant can engage in other types of substantial gainful work that exist in the national economy. The ALJ considers the claimant's residual functional capacity and vocational factors such as age, education and past work experience. See 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant can perform other types of work, the claimant is not disabled and the analysis ends.

Here, the ALJ initially found plaintiff capable of performing his past relevant work, a step four analysis. The ALJ set forth plaintiff's past work as apartment maintenance

1  ("He cleaned around grounds and washrooms.  He prepared apartments for renting.  He had to
2  move fridges and pull stoves out." CAR 15) and janitor ("He testified that at Wal-Mart, he had to
3  vacuum, buff floors, and clean bathrooms." CAR 15), and determined that as plaintiff described
4  it, plaintiff would be capable of performing the work given his RFC for medium exertion.  The
5  ALJ acknowledged the DOT refers to Janitor as heavy, but determined that as plaintiff actually
6  performed his past work, he is capable of returning to it.

7  Plaintiff contends that the ALJ could not make that determination without of
8  vocational expert.  However, the determination as to whether a claimant can perform his past
9  relevant work is a step four determination.  The burden remains with the claimant at this step to
10  prove he does not retain the ability to perform his past relevant work.  Only once the ALJ
11  determines the claimant cannot perform his past relevant work does the analysis proceed to the
12  fifth step to determine whether the claimant has the residual functional capacity to perform other
13  work.  At step five, the ALJ must determine whether a vocational expect is necessary or whether
14  the GRIDS apply.  See Crane v. Shalala, 76 F.3d 251, 255 (9th cir. 1993).

15  Here, the ALJ determined plaintiff had the ability to perform his past work as he
16  described it.  Specifically, the ALJ found:

> In comparing the claimant's residual functional capacity with the
> physical and mental demands of this work, the undersigned finds
> that the claimant is able to perform it as actually and generally
> performed.  He retains the ability to perform medium exertional
> simple unskilled work without frequent public or fellow employee
> contact.  Although the DOT refers to the Janitor position as
> requiring heavy exertion, the undersigned finds for the most part an
> RFC for medium exertion would accommodate the work, as he
> described it.

22  (CAR 15).

23  As such, the analysis could end without continuing to step five.  Plaintiff's
24  contention that the ALJ erred in making this determination without a vocational expert is
25  unsupported by case law.  As to plaintiff's contention that the ALJ erred in finding plaintiff
26  capable of performing his past relevant work based on the definition of his past work in the

Dictionary of Occupational Titles (DOT), the undersigned agrees with defendant that the definition contained in the DOT is only one possible determination. Another possibility is when a "claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it." SSR 82-61. Here, the ALJ determined that while plaintiff may not be capable of performing the job of janitor as described in the DOT, he was capable of performing his prior work as apartment complex janitor based on his testimony as to what was required to perform that particular job. As plaintiff performed that job, the ALJ determined he retained the ability to perform the job of apartment complex janitor, as none of his impairments would render him incapable. Plaintiff argues that moving a refrigerator, which would weigh over 200 pounds, would render him incapable. However, as the defense points out, moving a refrigerator would require pushing and pulling 200 pounds, not lifting. Plaintiff was limited in his abilities to lift more than 50 pounds, but was not limited in his ability to push and/or pull. In addition, the ALJ found plaintiff capable of performing his past work for Wal-Mart, also in the janitorial area, which does not appear to have such a lifting requirement.

Therefore, the undersigned finds no error in the ALJ's determination at step four that plaintiff is capable of performing his past relevant work.[2]

### D. Credibility

Finally, plaintiff argues the ALJ erred in determining the credibility of both plaintiff and his third party witness.

/ / /

---

[2] In addition, plaintiff contends the ALJ's alternative finding, that there are jobs existing in the national economy that he is also able to perform, was erroneous as no vocational expert was called to testify and the GRIDs do not apply due to his mental impairments. The undersigned disagrees with this contention as well. As the ALJ determined, and as discussed above, plaintiff's mental impairments are accounted for in the determination that he is limited to simple unskilled work. As such, use of the GRIDs were acceptable. See Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids)

1     As to plaintiff's credibility, the ALJ stated:

> In terms of the claimant's alleged impairments, the undersigned does not find him to be a wholly credible historian. His parole psychologist, Dr. C. Odipo, reported that the claimant did tend to be manipulative (Exhibit 7F/7). His CDC health record in May of 2010 shows that he denied any history of suicide and he denied hearing or seeing things that were not there (Exhibit 2F/3). However, in November of 2011, he told Dr. Stiles that he had attempted suicide at age 12 and age 20. He also reported that he used to hear things (Exhibit 9F). At the hearing, he testified that he just stopped hearing and seeing things one month before the hearing. He was being helped by medication (Testimony).
>
> The undersigned finds that some of the claimant's testimony was exaggerative.
>
> The claimant testified that in August of 2010, five guys jumped him and "busted his head open" (Testimony). His Kaiser records from August of 2009 show that he had been assaulted. His injuries included a right occipital scalp laceration, a frontal cephalhematoma (contusion), left rib fractures, and laceration to his right hand. He had a negative head CT scan (Exhibit 1F/24-25, 33, 42).

(CAR 14)

    The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

    If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

The undersigned finds the reasons provided by the ALJ for discrediting plaintiff are clear and convincing.  Specifically, plaintiff's reputation for being manipulative, and the inconsistency in his statements are both proper considerations given to the credibility of a claimant.  The undersigned finds no error.

///

As to plaintiff's third party witness, the ALJ stated:

> The undersigned accords some amount of evidentiary weight to his fiancé, Ms. Clover's Third Party Function report. She described him as somewhat limited mentally and physically, however, she also noted that he did do things in their home, even if he slept a lot. He cooked a bit, helped a little with chores, and watched the children after they returned from school (Exhibit 3E). The undersigned credits the fact that they had a 13-year relationship when Ms. Clover completed the report. However, the record is "flavored" by the fact that she and the children would benefit financially if the claimant is found disabled.

(CAR 14-15).

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

The undersigned finds the ALJ did not outright reject Ms. Clover's statements. Rather, the ALJ accorded the statements some weight. To the extent the ALJ failed to fully credit the statements, the undersigned agrees with plaintiff that the reason provided is insufficient. However, in that the ALJ did not outright reject Ms. Clover's statements, the undersigned finds the error harmless in that it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid. See Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004).

## IV.  CONCLUSION

Based on the foregoing, the undersigned finds that the ALJ committed reversible error for his failure to address Listing 12.05, and will recommend this matter be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 17) be granted;
2. Defendant's cross-motion for summary judgment (Doc. 23) be denied;
3. This matter be remanded for further proceedings consistent with this order; and
4. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED:  September 11, 2015

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE